UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-02692-SB-KS | Date: | March 25, 2022 |
|---|---|---|---|

| Title: | *Luben Romanov v. Amazon Services LLC* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Jennifer Graciano | Judy Moore |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Diana M. Khoury | Aimee G. Mackay |

**Proceedings:**   [In Chambers] ORDER RE: MOTION FOR FINAL CLASS SETTLEMENT APPROVAL AND ATTORNEYS' FEES AND COSTS [Dkt. Nos. 54, 55] (Held and Completed)

   Case called and appearances made.  This case is a class action brought by Plaintiff Luben Romanov against Defendant Amazon Services LLC on behalf of delivery associates employed by Defendant for unpaid wages and work expenses.  Plaintiff asserts that Defendant failed to compensate Class Members for pre- and post-shift work, prevented them from taking off-duty meal and rest breaks, and required them to use their personal cell phones for work-related tasks.  The parties negotiated a settlement of this class action and the Court conditionally certified a class and preliminarily approved the settlement on October 20, 2021.  Dkt. No. 53.  Plaintiff now moves for final approval of the class action settlement and an award of attorneys' fees and costs and incentive awards.  Dkt. Nos. 54 (Fees Mot.), 55 (Settlement Mot.).  For the reasons set forth below, the Court **GRANTS** the settlement approval motion in full and **GRANTS** the fees and incentive award motion in part.

# I. PROPOSED SETTLEMENT TERMS

*Class definition*: The settlement class consists of the following:

> [A]ll individuals employed by Defendant as Delivery Associates in the State of California at any time from January 23, 2016 through the date on which the Court grants preliminary approval of this Agreement or one-hundred and twenty (120) days from the April 23, 2021 mediation, (August 21, 2021), whichever occurs first. Excluded from the Class are those who previously released their claims against Defendant.

Settlement Agreement, Dkt. No. 46-3, at 1. The Class also includes a subgroup of Private Attorneys' General Act (PAGA) Members, consisting of all Class Members employed any time during the PAGA period—November 13, 2018 "through the date on which the Court grants preliminary approval of this Agreement or one-hundred and twenty (120) days from the April 23, 2021 mediation, (August 21, 2021), whichever occurs first." *Id*. at 4.

*Class benefits*: Defendants have agreed to a gross settlement of $700,000 excluding employer-sided taxes, which Defendants will additionally pay. *Id*. at 7. None of the gross settlement amount "will revert to Defendant under any circumstances." *Id*. Class members will be paid a net total of $369,166.67. The amount paid to each class member is determined by the number of pay periods each member had during the class period. *Id*. at 9. The Class Administrator calculated the amount owed per pay period by dividing the net settlement amount by the total number of pay periods of all Class Members. *Id*.

*Class notice*: Class members will be noticed through first-class mail "using the mailing information provided by Defendant" unless otherwise modified by updated information from a Class Member, Class Counsel, or the Class Administrator's search of the National Change of Address database and any performed skip traces. *Id*. at 11–12. For notices that are returned as undeliverable, the Class Administrator will take at least three steps to identify a Class Member's address: (1) track all undelivered mail, (2) perform address searches for all mail returned without a forwarding address, and (3) promptly re-mail notice packets to Class Members for whom new addresses are found. *Id*.

*Attorneys' fees and costs*: Plaintiff shall move the Court for an award of attorneys' fees and costs, estimated at $245,833.33. *Id*. at 7. The fee payment shall be

distributed to Class Counsel as follows: 60% to Cohelan Khoury & Singer, 20% to The Phelps Law Group, and 20% to The Carter Law Firm. *Id*.

*Incentive award to class representative*: Plaintiff shall also move the Court to approve an incentive award for the class representative in the amount of $10,000, and "[n]o payroll tax withholding and deductions will be taken from this payment." Settlement Agreement at 7.

*PAGA Payment*: Plaintiff shall also move the Court to approve a PAGA payment of $50,000, allocated as follows: $37,500 (75%) for the California Labor and Workforce Development Agency (LWDA) and $12,500 (25%) to all PAGA members based on the number of pay periods they had during the PAGA period. *Id*. at 8.

*Release*: The proposed settlement agreement provides that Defendant "shall be entitled to a full and final accord, satisfaction, settlement, and release" of "any and all claims and/or causes of action under any state, or federal law by Class Members or PAGA Members . . . that were alleged or that could have been alleged based on the facts asserted in the First Amended Complaint or letters previously submitted by Plaintiff to the LWDA." *Id*. at 4–5, 18–19. Any Class Member who does not exclude themselves from the settlement will be bound by the settlement. *Id*. at 5. And if they are members of the PAGA class, they will be bound by the release of their PAGA claims regardless of whether they opt-out of the settlement. *Id*.

\* \* \*

The Court conditionally certified the class for settlement purposes and found that the notice process comported with "all constitutional requirements including those of due process" when it granted preliminary approval. Prelim. App. at 2–3. Notices were mailed on December 10, 2021 in the manner described in the settlement agreement. Settlement Mot. at 9. Class Members were given a deadline of February 8, 2022 to object to or opt out of the settlement, which was extended to February 28, 2022 for any Class members that received re-mailed notices. *Id*. No objections or disputes were submitted, and only two of 4,983 Class Members opted out. *Id*. at 1; Dkt. No. 57.

The Settlement Agreement initially provided for a net settlement amount of $369,166.67, based on an estimated $12,500 in litigation expenses. Settlement Agreement at 8. Litigation expenses have since been calculated at $10,133.76, increasing the net settlement amount to $371,532.91. Settlement Mot. at 7.

Accordingly, Plaintiff now moves for final approval of the class action settlement, attorneys' fees and costs amounting to $243,467.09, and a $10,000 incentive award for Plaintiff.

## II. SETTLEMENT APPROVAL

Plaintiffs seek final approval of the class settlement. At this stage, the Court must "find[] that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. ED CV17-00616 JAK (PLAx), 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In addition to explicit collusion, a court should look for "more subtle signs" that class counsel have acted in their own self-interest or only in the interest of certain class members, such as: (1) class counsel receive a disproportionate amount of the settlement, or class counsel are "amply rewarded but class members receive no monetary relief; (2) a negotiated "'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) an arrangement reverting any fees not awarded to the defendant rather than the class fund. *Id*.

### A. The Proposed Settlement Is Fair, Reasonable, and Adequate.

#### 1. Strength of Plaintiff's Case and Settlement Amount

To determine if a settlement is fair, "the Court must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiffs' case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *LaGarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458). There's no one formula courts must use to determine the likelihood of Plaintiffs' success, but rather "nothing more than an amalgam of delicate balancing, gross approximations and rough justice," where even a "ballpark valuation" is sufficient. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (cleaned up).

Under the proposed settlement, Class Members will receive an average payment of $77.07—the highest payment will be $500.90 and Plaintiff himself will receive an estimated $68.75, less than the average payout. Settlement Mot. at 8 & n.4. As Plaintiff noted in his supplement to the motion for preliminary approval, there are "significant risks of recovering nothing on many of the claims" in this case. Dkt. No. 50, at 3. Defendant contends that it maintained compliant wage and hour, working time, and meal and rest break policies that would be "fatal" to or, at the very least present significant hurdles for, class certification. *Id.* at 3–7. Further, Plaintiff learned during discovery Defendant reimbursed over 1,500 Class Members for using their personal cell phones and provided Class Members with cell phones for the majority of the Class Period. *Id.* at 7–8.

Given the significant risks to class certification and recovery, the proposed settlement amount—even though it is a fraction of the potential damages—is fair and adequate. See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

#### 2. Duration of Further Litigation

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (cleaned up). Class Counsel have devoted over 400 hours to this litigation, *see*

Fees Mot. at 19, which will only increase if the case goes to trial, where a verdict in favor of Plaintiffs would likely be appealed, *see* In re Toyota Motor Corp., 2013 U.S. Dist. LEXIS 94484, at *233 (finding this factor weighed in favor of settlement because "[c]ontinued litigation of Plaintiffs' claims is unlikely to be resolved quickly, and any resolution by this Court is likely to be the subject of an appeal"). And as discussed *supra*, Plaintiff would face significant hurdles at the class certification stage, and a serious risk of recovering nothing on summary judgment or at trial. An immediate recovery for Class Members is preferable to prolonged risk and expense of further litigation, weighing in favor of settlement.

### 3. Completed Discovery and Stage of the Proceedings

A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." Nat'l Rural Telecomm. Coop., 221 F.R.D. at 528. As the Court noted in its order granting preliminary approval, "significant investigation, research, litigation, formal and informal discovery" were conducted and "the proposed Settlement has been reached as the result of intensive, informed, and non-collusive arms-length negotiations." Prelim. App. at 2.

### 4. Experience and Views of Counsel

Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomm. Coop., 221 F.R.D. at 528 (cleaned up); *see also* id. (noting that weight should be given "because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation" (cleaned up)). Plaintiff and Class Counsel believe that the proposed settlement is a fair, adequate, and reasonable resolution of this case.

### 5. Presence of a Governmental Participant

Plaintiff sought to enforce PAGA claims on behalf of the state and affected employees, and the settlement includes a $37,500 payment to LWDA. Accordingly, this factor weighs in favor of approval. *See* Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (PAGA payment to LWDA favors approving the settlement).

### 6. Reaction of the Class Members

As set forth in the settlement terms, notice was provided by U.S. mail to all Class Members and provided them the opportunity to opt out. Of all 4,983 Class Members, only 44 notices were ultimately deemed "undeliverable" because the Class Administrator could not locate a forwarding address. Butler Decl. ¶ 4., Dkt. No. 55-4. No objections or disputes were raised, and only two Class Members requested exclusion from the settlement. Settlement Mot. at 1. Accordingly, "[t]he absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529; *see also LaGarde*, 2013 WL 1283325, at *7 (noting the "strong presumption" that the terms of the proposed settlement are favorable where only three class members opted out and none objected).

## B.  The Settlement Is Not Collusive.

The proposed settlement allocates one-third of the gross settlement to attorney's fees, which represents almost 63% of the net award to the class and may be a "warning sign" of collusion. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258–59 (N.D. Cal. 2015). Notwithstanding this red flag, the Court finds that the settlement is not a product of collusion between the parties. As discussed *infra*, Class Counsel's request for attorney's fees is reasonable as a percentage of the gross settlement and is supported by a cross-check against Counsel's lodestar value. Nor are the attorneys' fees and incentive awards provided "separately from the class settlement" but instead made from the gross settlement amount, which is not suggestive of collusion. *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *see also Rodriguez*, 563 F.3d at 961 n.5 (noting that fees and awards made from the settlement fund instead of in addition to it did not "signal the possibility of collusion because, by agreeing to a sum certain, [the defendants] were acting consistent with their own interests in minimizing liability"). The parties negotiated the settlement with a neutral mediator, which further weighs "in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 948. And none of the settlement fund will revert to Defendant. Settlement Agreement at 7. Finally, there is no evidence of explicit collusion here, and Class Members are receiving a favorable outcome to which there are no objections. Accordingly, the Court is satisfied that the settlement did not result from collusion between the negotiating parties.

*   *   *

Based on its analysis of the factors for settlement final approval, this Court finds that the settlement is "fair, reasonable, and adequate" and not the product of collusion between the parties. *Lane*, 696 F.3d at 818 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 23(e)). The Court therefore **GRANTS** Plaintiffs' motion for final approval of the class action settlement.

### III.      ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Plaintiff also seeks an award of attorneys' fees and costs in the amount of $243,467.09 and a $10,000 incentive award for himself.

### A.      Attorneys' Fees

Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class," and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. Regardless of which method the court applies, "the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *8 (C.D. Cal. July 21, 2008) (cleaned up). The percentage method is sometimes preferred, particularly if the use of the lodestar method would endorse a "collusive settlement[] that exchange[d] a low recovery for a high fee award." *Suzuki v. Hitachi Glob. Storage Techs., Inc.*, No. C 06-7289 MHP, 2010 WL 956896, at *2 (N.D. Cal. Mar. 12, 2010) (internal quotation marks omitted) (quoting *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 30 (2000)).

Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25% benchmark. *Hanlon*, 150 F.3d at 1029. The benchmark should be adjusted or replaced with a lodestar calculation when "special circumstances" justify a departure. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Courts consider the following factors in determining whether the requested adjustment is reasonable: "(1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

These factors weigh in favor of approving the requested $233,333.33 in attorneys' fees, which amounts to 33.33% of the gross settlement. Counsel obtained a favorable result for the class, especially in light of the substantial risks associated with further litigation. Class Counsel have sufficient relevant experience—which they used to obtain a positive result through mediation of this matter—and pursued this case on a contingency fee basis.[1] *See* Khoury Decl., Dkt. No. 54-2, ¶¶ 8–9 (documenting counsel's extensive experience in representative actions, including wage and hour class actions); Phelps Decl., Dkt. No. 54-11, ¶ 7 (same). Finally, courts in the Ninth Circuit commonly find acceptable requests for attorneys' fees that represent 20% to 33.33% of the total settlement. *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 3412725, at *8–9 (E.D. Cal. June 22, 2020) (collecting cases).

The requested fee is further supported by a cross-check against a rough estimate of the lodestar value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Barbosa*, 297 F.R.D. at 451 (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours"). The lodestar is calculated by multiplying the hours reasonably expended times a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941.

Counsel represent that nine attorneys spent a total of 476.9 hours (444.4 current and 32.5 future) on this action. Dkt. No. 54-3. They litigated this case for two years and expended hours on numerous tasks including discovery, reviewing data Defendant produced for mediation and estimating potential liability exposure, interviewing a sample of the 4,983 Class Members, attending mediation, finalizing the settlement, and petitioning the court for settlement approval. Khoury Decl. ¶¶ 19–33 (detailing counsel's work on this case). The Court therefore finds that the number of hours requested is reasonable. *See Barbosa*, 297 F.R.D. at 451–52 (finding over 900 expended hours reasonable given "the legal issues and the amount of discovery conducted, the number of Defendant's employees included in the Settlement Class, the mediation preparation required, and motion practice with respect to the Settlement Agreement").

---

[1] Plaintiff consented to a contingency fee of up to one-third of any recovery. Settlement Mot. at 7 n.3.

Class Counsel, all of whom are partners at their respective firms, request the following rates:

| Name | Year Admitted | Hours | Rate |
|---|---|---|---|
| Timothy Cohelan | 1974 | 4.3 | $900 |
| Isam Khoury | 1974 | 21.6 | $900 |
| Michael Singer | 1984 | 52.3 | $900 |
| Diana Khoury | 1987 | 89.5 | $725 |
| J. Jason Hill | 1990 | 134.2 | $600 |
| Roger Carter | 1989 | 59.7 | $750 |
| Marc H. Phelps | 2005 | 70.4 | $600 |
| Amber Worden (paralegal) | N/A | 4.8 | $200 |
| Matthew Atlas (paralegal) | N/A | 7.6 | $170 |

Dkt. No. 54-3.

The requested rates for paralegals Worden and Atlas are reasonable. *Taylor Farms Cal., Inc. v. Cooper's Cold Foods, Inc.*, No. 19-cv-8924 DDP (GJSx), 2021 WL 5178475, at *2 (C.D. Cal. Nov. 8, 2021) ("[S]everal other courts within the district have held rates of $150 to $276.25 to be reasonable for the work of paralegals depending on their degree of experience and skill."). But some of Class Counsel's requested rates appear to be at or above the high end of the market rate in the Central District. In support of their requested rates, Counsel attach a 2014 national billing rate survey that notes a range between $440 and $975 for partner rates in the Los Angeles area. Dkt. No. 54-5. Counsel do not cite any case in which their requested rates have previously been approved, and other cases suggest that $900 is at the upper end or beyond the market rate for wage-and-hour class actions. *See, e.g.*, *Gomez v. USF Reddaway Inc.*, No. LA CV16-05572 JAK (FFMx), 2020 WL 10964603, at *8 (C.D. Cal. Sept. 21, 2020) (finding rates between $450 and $850 to be reasonable for wage-and-hour attorneys in the Central District); *Ayala v. U.S. Xpress Enterprises, Inc.*, No. EDCV 16-137-GW (KKX), 2019 WL 1581395, at *3 (C.D. Cal. Feb. 13, 2019) (approving rates between $600 and $795). But even if the Court did reduce the highest of the requested rates for Cohelan, Singer, and Isam Khoury to Diana Khoury's more reasonable rate of $725, the lodestar value would still be over $300,000—well above the 33.33% they request from the gross settlement.

Accordingly the Court finds that the requested fees are reasonable under the percentage method and supported by a lodestar cross-check.

**B.   Costs**

Counsel request $10,133.76 in costs. This includes mediation fees, travel expenses, filing fees, mailing and shipping costs, and photocopies. Dkt. No. 54-6, Phelps Decl. ¶ 16; *see also Barbosa*, 297 F.R.D. at 454 (noting that travel fees, mediation fees, and photocopies, and delivery and mail charges are "routinely reimbursed"). These costs are traditional litigation expenses, do not appear to be excessive, and are less than Counsel's initial estimate of $12,500. Settlement Agreement at 7. Accordingly, the Court finds that the requested costs are reasonable.

**C.   Incentive Awards**

Finally, Plaintiff seeks a $10,000 incentive award for himself. Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 266–67. Several factors guide the Court's determination of whether Plaintiff's requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010).

The Court expressed its concern about the appropriateness of Plaintiff's award, "which is double the amount considered presumptively reasonable in the Ninth Circuit, given his stated level of involvement in this matter," and noted that it would take a closer look on final approval. Prelim. App. at 5. Upon review, the Court does not find that the record justifies such a high incentive award. Plaintiff

only spent an estimated 37 hours on this case over two years, and while he notes that he risked the loss of future employment opportunities to serve as a class representative, he does not identify any actual lost prospects. Fees Mot. at 22–23; Phelps Decl. ¶ 13; *see also* Bellinghausen, 306 F.R.D. at 267 (finding a $15,000 award excessive and awarding $10,000 to a plaintiff who spent 73 hours on the case over 21 months and lost job opportunities because of his role as class representative). Plaintiff notes that his estimated $68.75 individual recovery from the settlement is less than the average payout. Settlement Mot. at 8 & n.4; La Fleur v. Med. Mgmt. Int'l, Inc., No. EDCV 13-00398-VAP, 2014 WL 2967475, at *8 (C.D. Cal. June 25, 2014) (noting that "other class members may recover more than the named plaintiffs"). But the average disbursement to Class Members is only $77.07 and the highest payment will be $500.90. Settlement Mot. at 8. Compared to these amounts, Plaintiff's award appears "excessive and less reasonable in light of the discrepancy it will create" between Plaintiff's award and the remainder of the class. Bellinghausen, 306 F.R.D. at 267. However, Class Counsel Marc Phelps describes Plaintiff as "an exceptionally involved class representative" who was active in the case, "stayed abreast of happenings at Amazon" to let counsel "know what was taking place on the ground," and "did his own research on the case." Phelps Decl. ¶ 13. Accordingly, balancing the level of Plaintiff's involvement, his assumed risks in pursuing this litigation, and his less-than-average payout from the settlement, the Court will award $7,500 to named Plaintiff Romanov.

## CONCLUSION

For the foregoing reasons, Plaintiff's unopposed motion for final approval of the class settlement is **GRANTED**. Plaintiff's unopposed motion for attorneys' fees and costs and an incentive award is **GRANTED** in part. The Court awards $243,467.09 in fees and costs to Class Counsel and a $7,500 incentive award to named Plaintiff Luben Romanov.

:04